Argued and submitted January 16, affirmed May 27, petition for review denied October 7, 1998 (327 Or 583)

In the Matter of the Compensation of
Serafin C. Lopez, Claimant.

Serafin C. LOPEZ,
*Petitioner,*

*v.*

AGRIPAC, INC.,
and Liberty Northwest Insurance Corporation,
*Respondents.*

(95-13600; CA A98380)

960 P2d 885

Dale C. Johnson argued the cause for petitioner. With him on the brief was Malagon, Moore, Johnson & Jensen.

John M. Pitcher argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Claimant seeks review of an order of the Workers' Compensation Board that reduced his scheduled award of permanent partial disability for loss of use or function of his left knee from 19 percent to five percent. We review for substantial evidence and errors of law, ORS 183.482(7), (8), and affirm.

The Board made the following findings, which claimant agrees "are sufficient for the purposes of this review": In 1989, claimant injured his left knee in a nonwork-related car accident. His doctor diagnosed "internal derangement of the left knee," and claimant underwent arthroscopic correction of a rim tear of the lateral meniscus. During his rehabilitation for that knee injury, claimant's physical therapist noted that claimant required "aggressive rehab intervention" to both knees. The thereapist continued, "[Claimant] has significant joint noise in [his] right knee and apparently has at least as much pain in [his] right knee as he does [in his] left." The therapist diagnosed claimant with "right knee disfunction" [*sic*].

In June 1994, claimant sustained another left knee injury when he stepped on a cob of corn in employer's food-processing plant, which caused him to twist his knee. In March 1995, he underwent left knee arthroscopy and medial meniscectomy. Following claimant's closing examination, his attending physician, who had performed that surgery, concluded, "On physical examination [claimant] has full ROM and no effusion. There is no medial joint line tenderness any longer. * * * He is medically stationary. The only impairment he has is [a] loss of a portion of his medial meniscus." In July 1995, a determination order awarded claimant five percent disability because of the 1995 surgery on his left knee. Claimant sought reconsideration of that order.

In October 1995, a medical arbiter examined claimant. The arbiter noted that claimant was working full time without restrictions, that he was not receiving any specific treatment for the knee and that he was taking no medications. He also noted claimant's 1989 injury to his left knee and that claimant had stated that he thought that his knee

had "improved to the status of his knee just prior to the injury of September 6, 1994." In response to a question about whether claimant had a chronic limiting condition, the medical arbiter stated that, because claimant had stated that his knee had returned to its condition before the 1994 injury, claimant did "not have any limited or partial loss of ability to repetitively use his knee [from] the incident of September 1994. Limited use of the knee is present, but it is basically based on history, and is apparently related to his injury of March 29, 1989." The arbiter found that claimant's range of motion for each of his knees was 120 degrees of flexion and zero degrees of extension. There was not an "indication in the arbiter's examination report that * * * claimant's right knee was injured at any time prior to the medical arbiter examination."[1] In December 1995, an order on reconsideration affirmed the determination order.

Claimant sought a hearing and the administrative law judge (ALJ) reversed the order on reconsideration, awarding claimant 19 percent permanent partial disability. Under OAR 436-035-0007(22), to determine a claimant's range of motion for a joint, the injured joint's range of motion is compared with that of the contralateral joint, unless the contralateral joint has a history of injury or disease. Because claimant's knees both have 120 degrees of flexion, when the two knees are compared, claimant has no compensable range of motion impairment. The ALJ concluded, however, that the physical therapist's 1989 notes constituted evidence of an injury or disease to claimant's right knee. Therefore, the ALJ did not compare the two knees but simply compared claimant's 120 degrees of flexion to the relevant chart, OAR 436-035-0220, and determined that claimant's impairment for his range of motion was 11 percent. The ALJ also concluded that claimant was entitled to a five percent award for his chronic condition, because employer had not affirmatively proven that claimant had a preexisting impairment that caused the chronic condition. When those two awards were

---

[1] The arbiter found that claimant "has mild crepitus in the *right* and left knee, with patellofemoral click noted bilaterally." (Emphasis supplied.) Crepitus is joint noise. Claimant does not challenge, however, the Board's finding that the arbiter's report does not indicate that claimant had suffered a past injury or disease to the right knee, so we accept that finding.

combined with (not added to) claimant's five percent award, the ALJ concluded that claimant was entitled to 19 percent impairment.

Employer sought review and the Board reversed the ALJ. It concluded that the ALJ had erred in concluding that claimant had established a history of injury or disease to his right knee sufficient to preclude comparison of the two knees under OAR 436-035-0007(22):

> "[I]n the absence of persuasive medical evidence indicating that claimant's right knee does have a history of injury or disease, we find the therapist's 1989 report, without more, is insufficient to establish that claimant's right knee 'has a history of injury or disease' for purposes of rating his left knee impairment under OAR 436-035-007(22)."

As a result, when determining claimant's range of motion impairment, the Board compared claimant's knees and concluded that claimant was not entitled to an impairment award for his left knee's limited range of motion. The Board also concluded that the ALJ had erred in concluding that claimant had a chronic condition related to the 1994 injury. It agreed, however, that claimant was entitled to a five percent impairment award, so it affirmed the order on reconsideration.

■       On review, claimant assigns error to the Board's conclusion that OAR 436-035-0007(22) requires comparison of the contralateral joint unless there is medical evidence establishing a history of injury or disease to the contralateral joint. OAR 436-035-0007(22) provides, in relevant part:

> "The range of motion or laxity (instability) of an injured joint shall be compared to and valued proportionately to the contralateral joint except when the contralateral joint has a *history of injury or disease* or when either joint's range of motion is zero or is ankylosed. * * *
>
> "* * * * *
>
> "(b)   When the contralateral joint has *a history of injury or disease*, the findings of the injured joint shall be valued based upon the values established under these rules."

(Emphasis supplied.) Claimant argues that the reference to "a history of injury or disease" means that he is required only to submit evidence that provides an "account" of an injury or disease to the contralateral joint. The plain language of the rule, claimant argues, does not require a claimant to submit medical evidence of that injury or disease.

Employer disagrees, arguing that, under the relevant rules and statutes, the account of an injury or disease to the contralateral joint must be established by medical evidence. Considering the text and context of OAR 436-035-0007(22), we agree with employer. The authority of the director of the Workers' Compensation Division to promulgate OAR 436-035-0007(22) is derived from ORS 656.726(3)(f), which permits the director to adopt rules for the evaluation of disabilities. In adopting those rules, the director had to adhere to the principle that "[i]mpairment is established by a preponderance of medical evidence based upon objective findings." ORS 656.727(3)(f)(B). That proposition is stated more generally in ORS 656.283(7), which provides that "[a]ny finding of fact regarding the worker's impairment must be established by medical evidence that is supported by objective findings." (Emphasis supplied.)

While OAR 436-035-0007(22) does not specifically refer to that requirement, the director echoed those statutory provisions in OAR 436-035-0010(1), which provides that "[a]ll physical disability ratings in these rules shall be established on the basis of medical evidence that is supported by objective findings from the attending physician or as provided in OAR 436-035-0007." Those provisions anticipate that any finding about a claimant's condition that bears on a determination of impairment will be supported by medical evidence. Whether an injured joint should be compared to its contralateral joint is such a finding. Therefore, we conclude that OAR 436-035-0007(22) requires that a "history of injury or disease" to the contralateral joint be established by medical evidence.[2]

---

[2] We agree with claimant that OAR 436-035-0007(22) does not require that the claimant establish that he or she currently has an injury or disease that affects the contralateral joint. It requires only that the claimant establish a *history* of such injury ~r disease. To the extent that the Board's opinion indicates otherwise, it is incorrect.

■■ Claimant argues that even if that interpretation of the rule is correct, the Board's conclusion that claimant has not established a history of injury or disease in this case cannot stand in light of the physical therapist's 1989 report. We disagree. Medical findings relating to a claimant's permanent impairment must be made by the claimant's attending physician or a medical arbiter. ORS 656.245(2)(b)(B); ORS 656.268(7). Evidence relating to the impairment from other sources is admissible only if those findings are ratified by the attending physician or the medical arbiter. *Simon v. PIE Nationwide, Inc.*, 142 Or App 411, 414 n 5, 921 P2d 421 (1996). Therefore, even if we assume that the physical therapist's report supports claimant's position that he has a history of injury or disease to his right knee, that evidence is inadmissible unless it is ratified by either the attending physician or the arbiter. Claimant concedes that it was not. Therefore, on this record, claimant failed to establish that he had a history of injury or disease to his right knee and the Board did not err in comparing claimant's knees in determining his impairment to his right knee.[3]

Affirmed.

---

[3] Claimant does not challenge the Board's conclusion that he is not entitled to an award for a chronic condition. Hence, we do not consider that ruling.